In re John E. & Brenda M. MacLEOD, d/b/a Ragged Mountain Construction, Debtors.

John E. MacLEOD and Brenda MacLeod, Plaintiffs,

v.

C & G INVESTMENT GROUP, Reginald Gaudette, and William Raitt, Defendants.

Bankruptcy No. 90–698.
Adv. No. 90–78.

United States Bankruptcy Court, D. New Hampshire.

July 27, 1990.

Diane M. Puckhaber, Rogers & Puckhaber, Concord, N.H., for debtors.

Marc L. Van De Water, Thomas & Utell, Manchester, N.H., for C & G Inv. Group.

Virginia Greiman, Boston, Mass., U.S. Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

Plaintiffs filed a Complaint against defendants for turnover of property pursuant to section 542 of the Code. They sought the turnover of a bulldozer and excavator which defendants repossessed on April 27, 1990 prior to the chapter 11 filing. A hearing was held on June 27, 1990 after which I made a bench ruling that the repossession was unlawful and ultimately entered an order directing the turnover. Today, I refine my remarks in an opinion with regard to the repossession issue since there is no case law in New Hampshire on this issue.

### Facts

Prior to the repossession on April 27th, the defendants attempted two prior repossessions. In each case, the defendants' agents came onto the plaintiffs' property, with uniformed state police, and over the verbal protests of plaintiff, John MacLeod, attempted to start the equipment. However, the equipment failed to start and they left. MacLeod on each occasion said he believed legal proceedings were going on that prevented any repossession.[1]

Prior to the attempted repossessions, the state police were shown the security agreement, which they mistook for a court order authorizing repossession. The state police were not acting in their official capacity, but were on "civil standby". Under this procedure, the police are paid by a private party to assist in matters like preventing violence at the scene of a domestic quarrel, directing traffic at a highway construction project, or escorting a wideload truck.

On April 27th a state policeman was also involved due to the anticipation of possible violence from plaintiff, John MacLeod.

---

1. He was apparently referring to a Chapter 11 petition which his attorney had promised to file, but had not yet filed.

The policeman woke John MacLeod up at 6:30 a.m., and told him that a repossession was going to take place and he was not to leave the house. MacLeod was also told not to "do something stupid." The defendants agents were able to start the equipment with the assistance of a mechanic, and took the equipment.

The defendants' attorney who was involved in the repossession on April 27th testified that if John MacLeod had told the repossessors to leave the property they would have ceased the repossession effort immediately and left the premises. I do not find this testimony credible. A person forcibly restrained by a police officer is not in the position to politely ask people to leave. In addition, I find the persistent conduct of the defendants over the repeated protests of John MacLeod inconsistent with this testimony.

### Statutory Provision

A self-help repossession can only be done without a breach of the peace. This rule is stated in NHRSA 382–A:9–503 as follows:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under Section 9–504."

### Discussion

■ The repossession was unlawful because the plaintiffs in no way *consented* to the repossession. See generally *Teeter Motor Co., Inc. v. First National Bank of Hot Springs*, 260 Ark. 764, 543 S.W.2d 938 (1976); *Bloomquist v. First National Bank of Elk River*, 378 N.W.2d 81 (Minn. Ct.App.1986).

■ Yet, there is a separate and more compelling reason why a breach of the peace occurred in this case—the defendants introduced law enforcement personnel into the repossession. Four cases have held that the use of law enforcement personnel for a self-help repossession renders the repossession unlawful. See *Waisner v. Jones*, 107 N.M. 260, 755 P.2d 598 (1988); *Walker v. Walthall*, 121 Ariz. 121, 588 P.2d 863 (App.1978); *First and Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137 (Ky.Ct.App.1988); *Stone Mach. Co. v. Kessler*, 1 Wash.App. 750, 463 P.2d 651 (1970).

In the *Walker* case the repossessor went with a uniformed police officer to the debtor's home and obtained verbal consent to take an automobile. The police officer said and did nothing. The creditor had the police officer there to prevent anticipated violence. The court concluded:

In the instant action we believe the presence of the deputy sheriff and its accompanying intimidation is the same kind of conduct condemned by the Washington court, *supra*. The fact that the deputy did not say anything is not significant. Nor is it required that the possessor (Walthall here) actually indicate resistance, either verbally or physically to the uniformed and armed officer.

Such a result, if left standing, would set a precedent by involving local law enforcement in self-help repossessions, and would create the very volatile situations the statute was designed to prevent.

\* \* \* \* \* \*

We believe, therefore, that the introduction of law enforcement officers into the area of self-help repossession, regardless of their degree of participation or nonparticipation in the actual events, would constitute state action, thereby invalidating a repossession without proper notice and hearing.

*Id.* 588 P.2d at 865–66.

Similarly, in *First and Farmers Bank, supra,* the Kentucky court was confronted with a case where a uniformed policeman met the creditor at the scene of the repossession when the debtor was verbally protesting the repossession to the creditor. At most the policeman answered the debtor's question whether the bank had the right to repossess by nodding his head. The court stated:

If a creditor is allowed to unofficially use the powers of the state to squelch potential breaches of the peace, he can effectively evade or avoid the statute. The statute makes it clear that a creditor runs the risk of serious liability if he proceeds with a self-help repossession when there is a serious objection by the debtor. If the strong arm of the law is needed, then the creditor must secure judicial intervention when a police officer is carrying out or sanctioning the repossession.

On that issue, *Stone Machinery Company v. Kessler,* 1 Wash.App. 750, 463 P.2d 651 (1970), is quite persuasive. There, the creditor secured the local sheriff in full regalia to assist in the repossession of a caterpillar tractor since the debtor was inclined toward violent defense of his property. The court held that where the officer was acting under color of office, without legal process, and the creditor thereby took possession of the collateral over debtor's objection, the creditor had committed trespass. *Id.* [463 P.2d] at 654. The court explained that the actions amounted to constructive force, intimidation, and oppression constituting a breach of the peace. Moreover, the creditor's actions completely circumvented the purpose and intent of the Code. *Id.* at 655.

Although the intervention of Deputy Kelly was not as active as that in *Stone Machinery,* the distinction is without difference. The net effect in both cases was to override the debtor's right to object. As a result, under the authorities cited, there was a breach of the peace. *Id.* at 141.

The reasoning of these cases is persuasive. In short, if a creditor can argue that they have avoided a breach of the peace by use of law enforcement personnel, and then contend they are in a position for self-help repossession, they effectively circumvent the intent of the statute which is to give the debtor a right to object without the presence of state action.

*Conclusion*

The repossession of equipment by defendants without the consent of the plaintiffs and with the assistance of the state police was not a self-help repossession and accordingly was unlawful. Therefore, that element of plaintiff's complaint for turnover has been proven.